IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 1, 2022

## TRAVIS SEIBER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 13-00594     W. Mark Ward, Judge**

_____

### No. W2020-01649-CCA-R3-PC

_____

The petitioner, Travis Seiber, appeals the denial of his petition for post-conviction relief, which petition challenged his convictions of aggravated robbery, alleging that he was deprived of the effective assistance of counsel. Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and JILL BARTEE AYERS, J., joined.

Monica A. Timmerman, Memphis, Tennessee, for the appellant, Travis Seiber.

Herbert H. Slatery III, Attorney General and Reporter; Katherine K. Decker, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case arose from the August 2012 armed robbery of Jose Escobar, Juan Camacho, and Ofelia Romero, in which the petitioner took money and cellular telephones from the victims at gunpoint. *State v. Travis Seiber*, No. W2015-00221-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Jackson, Feb., 23, 2016). This court summarized the evidence on direct appeal:

> The evidence adduced at trial established that the [petitioner] and another man approached the victims in the parking lot of the Bella Vista Apartments shortly before 3:00 a.m. Mr. Escobar testified that the [petitioner], whom he was able to identify because of the distinctive scar on his face and his

unusual hairstyle, pointed a black gun at Mr. Camacho before the [petitioner] and another man, who kept his face covered, took money and cellular telephones from the victims. Both Mr. Escobar and Mr. Camacho identified the [petitioner] as the gun wielding perpetrator from a photographic array. . . . Additionally, Mr. Escobar testified that he gave the perpetrators his money and cellular telephone because he feared the [petitioner] would shoot Mr. Camacho. The other victims gave their property to the perpetrators at gunpoint, and [the victims'] leaving town shortly after the offenses circumstantially established that the taking was accomplished by putting them in fear.

*Id.*, slip op. at 9 (citation omitted). The jury convicted the petitioner of three counts of aggravated robbery, and the trial court imposed an effective 20-year sentence. *Id.*, slip op. at 3. This court affirmed the petitioner's convictions on direct appeal. *Id.*, slip op. at 1.

The petitioner filed a timely petition for post-conviction relief, arguing that trial counsel performed deficiently by failing to move to suppress the victims' pre-trial identifications, failing to seek a psychiatric evaluation, and failing to "adequately investigate and interview witnesses." The post-conviction court held a bifurcated evidentiary hearing on January 15 and November 5, 2020.[1]

At the January 2020 hearing, trial counsel testified that he first represented the petitioner in general sessions court and continued to represent him after the case was transferred to the criminal court. Counsel recalled that he reviewed the discovery materials with the petitioner and said that the petitioner "maintained his innocence throughout" the case. The petitioner told trial counsel that, based on prior interactions with Officer Dennis Williams, one of the investigating officers in this case, he believed the officer "had it in for him." Counsel said that Officer Williams denied having any prior interactions with the petitioner.

---

[1]     Trial counsel testified at the evidentiary hearing on January 15, 2020, and, because of a time restraint, the post-conviction court continued the hearing until March 27, 2020, to hear the remainder of the evidence. The hearing did not resume until November 5, 2020, however, at which time, the hearing was conducted via Zoom. Although nothing in the record explains the lengthy continuation of the hearing, we note that on March 13, 2020, our supreme court suspended all in-person court proceedings, with certain exceptions, until March 31, 2020, due to the COVID-19 pandemic. *In Re: COVID-19 Pandemic*, No. ADM2020-00428 (Tenn., Mar. 13, 2020) (order). The court later extended the suspension of in-person proceedings but allowed courts to hold "proceedings by telephone, video, teleconference, email, or other means." *In Re: COVID-19 Pandemic*, No. ADM2020-00428 (Tenn. Mar. 25, 2020) (order).

Trial counsel said that a victim had identified the petitioner from a photographic array but that the petitioner told him that he believed that identification was fabricated because of some sort of writing on the photograph. Counsel recalled that the police officers' inability to speak or understand Spanish was an issue in the investigation of the case. He said that at trial, one officer testified that he was unable to interview the victims at the scene because he did not speak Spanish and acknowledged that he did not request the services of an interpreter despite having one available at his precinct. Counsel also said that Detective Fausto Frias acknowledged at trial that he did not speak Spanish and that he could not communicate with the victims.

Trial counsel said that the petitioner told him that "he was not able to hold a gun" due to a prior injury to his hand and that the petitioner's medical records indicated that he had suffered a hand injury. Counsel explained, however, that although he believed that the petitioner had suffered a hand injury, he did not think the injury would have prevented him from holding a gun during the commission of the offense, noting that "there was no accusation that he fired the gun" or otherwise held the gun "properly." Counsel said that he "couldn't see any real problem with that."

Trial counsel said that he presented two alibi witnesses at trial but, despite his carefully preparing the witnesses and "encourag[ing] them to make sure that they were telling the truth and they knew where [the petitioner] was and what time he was there," the witnesses' testimony "was not good. . . . They confused the times and the places and they were just not good witnesses." Counsel said that he did his best to rehabilitate their testimony.

During cross-examination, trial counsel testified that he reviewed the petitioner's criminal record and discussed it with him in the context of whether the petitioner would testify. Counsel said that he attacked the discrepancies in the evidence and the officers' communication failures with the Spanish-speaking victims through cross-examination. He said that the defense strategy was to present an alibi, which was the strategy the petitioner wanted to take.

The petitioner testified that he was charged with aggravated robbery in this case because "Officer D. Williams involved me in this case." The petitioner said that he "discussed with [trial counsel] that Officer D. Williams had a personal vendetta against me, that we have had run-ins several times." He said that on a prior occasion, Officer Williams "tried to remove me from my house and then he tried to take me to jail," but "we got into a big argument." Officer Williams "wrote me a citation for disturbing the peace and . . . . I vowed to try to take some action. I balled the citation up in front of him." Approximately one month later, Officer Williams "picked me up walking and lied to me

like I had a warrant, and when we got downtown, then Detective Frias say to me that they've involved me in this case."

The petitioner said that when Officer Williams arrested him in this case, the officer told him that he "fit the description of someone hav[ing] something to do with a robbery" and that he was taking him in for an identification. The petitioner said that, at the police station, he was placed in an interview room and that he identified himself from a photographic array, at which point he saw Detective Frias make a copy of the photograph and "circle my face twice." Detective Frias then told the petitioner that he was under arrest. The petitioner said that when he told Officer Williams that he was not involved in the robbery, the officer "told me, we know you didn't do nothing, prove it to the judge." The petitioner said that he told all of this to trial counsel but that counsel never sought a copy of the citation for disturbing the peace that Officer Williams gave him. The petitioner said that he wanted trial counsel "to let the [c]ourt know that Officer D. Williams threatened me with this" but that counsel "went about my case trying to prove where I was at the time of the crime."

During cross-examination, the petitioner reiterated that he wanted trial counsel "to prove that these two officers w[ere] involving me in something that I had nothing to do with."

In its written order denying post-conviction relief, the post-conviction court found that the petitioner failed to establish any instance of deficient performance by trial counsel.

In this timely appeal, the petitioner argues that trial counsel performed deficiently by failing to discover evidence of Officer Williams' prior interactions with the petitioner and by failing to impeach Detective Frias regarding his inability to speak Spanish. The State argues first that the petitioner waived the issues because he failed to raise these specific instances of alleged deficient performance in his post-conviction petition. Alternatively, the State argues that the petitioner is not entitled to post-conviction relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79

(Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation omitted), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Citing *Holland v. State*, 610 S.W.3d 450, 458 (Tenn. 2020), the State argues that the petitioner waived his claim of ineffective assistance of counsel by failing to raise in his post-conviction petition the specific instances of deficient performance alleged on appeal. We disagree. Although it is true that "Tennessee appellate courts may only consider issues that were not formally raised in the post-conviction petition if the issue was argued at the post-conviction hearing and decided by the post-conviction court without objection," *id*, here, the petitioner presented a broad claim of ineffective assistance of counsel in his petition and fleshed his claims out by presenting evidence at the evidentiary hearing. Because even multiple allegations of deficient performance constitute only a single claim of ineffective assistance, *see Thompson v. State*, 958 S.W.2d 156, 161 (Tenn.

-5-

Crim. App. 1997) ("Ineffective assistance of counsel is generally 'a single ground for relief' under the post-conviction statute." (citing *Cone v. State*, 927 S.W.2d 579, 581-82 (Tenn. Crim. App. 1995))), the specific instances of alleged deficient performance raised on appeal are not waived.

Turning to the merits, we conclude that the petitioner has failed to establish that he is entitled to post-conviction relief. The petitioner argues first that counsel failed to offer evidence of the petitioner's prior interactions with Officer Williams; however, the petitioner failed to present a copy of the citation or any other evidence that he believed trial counsel could have offered at trial to rebut Officer Williams' assertion that he had no prior interactions with the petitioner. *See Smith v. State*, No. M2018-01302-CCA-R3-PC, 2019 WL 3287068, at *5 (Tenn. Crim. App., Nashville, July 22, 2019) (citing *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990)) (denying post-conviction relief when the petitioner failed to present at post-conviction hearing what evidence he believed counsel should have offered at trial). Similarly, because the petitioner did not call Detective Frias at the evidentiary hearing, he has failed to establish what Detective Frias's testimony would have been had trial counsel questioned him on whether the detective spoke Spanish. *See Black*, 794 S.W.2d at 757.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

-6-